# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39745 (f rev)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nicholas D. WALKER**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 23 June 2021

———————————

*Military Judge:* Thomas J. Alford; Andrew R. Norton (Remand).

*Sentence:* Sentence adjudged on 7 June 2019 by GCM convened at McConnell Air Force Base, Kansas. Sentence entered by military judge on 24 June 2019 and reentered on 18 February 2021: Dishonorable discharge, confinement for 18 months, reduction to E-1, forfeiture of all pay and allowances, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and RAMÍREZ, *Appellate Military Judges.*

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

RAMÍREZ, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, consistent with his pleas pursuant to a pretrial agreement (PTA), of one charge and 17 specifications of wrongful use, possession, distribution, manufacture, and importation of various controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a;[1] and one charge and its specification of incapacitation for duty in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2] The charges and specifications alleged criminal offenses from 2015 to 2018.

The military judge sentenced Appellant to a dishonorable discharge, confinement for 25 months, reduction to the grade of E-1, forfeiture of all pay and allowances, and a reprimand. The convening authority took no action on the findings but took action regarding the sentence by approving confinement for only 18 months in accordance with Appellant's PTA.

Appellant raises three issues on appeal: (1) whether he is entitled to sentence relief because he was denied his prescribed Lexapro medication when he first entered post-trial civilian confinement, making the conditions cruel and unusual under the Eighth Amendment[3] to the United States Constitution and Article 55, UCMJ, 10 U.S.C. § 855, or alternatively under *United States v. Gay*,[4] because his post-trial confinement conditions rendered his sentence inappropriately severe; (2) whether he is entitled to sentence relief under *United States v. Moreno*,[5] or alternatively under *United States v. Tardif*,[6] because his case was not docketed with our court within 30 days of action by the convening authority; and (3) whether he is entitled to sentence relief because other aspects of his post-trial civilian confinement conditions were cruel and unusual under the Eighth Amendment and Article 55, UCMJ, or alternatively, under

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] One charge and its specification for fraudulent enlistment in violation of Article 83, UCMJ, 10 U.S.C. § 883, was withdrawn and dismissed pursuant to the PTA.

[3] U.S. CONST. amend. VIII.

[4] 74 M.J. 736 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

[5] 63 M.J. 129 (C.A.A.F. 2006).

[6] 57 M.J. 219 (C.A.A.F. 2002).

*Gay*, because his post-trial confinement conditions rendered his sentence inappropriately severe.[7]

This case is before us for a second time. In our first opinion, we remanded the case to the Chief Trial Judge, Air Force Trial Judiciary, to resolve a substantial issue with the convening authority's decision memorandum as the action taken on Appellant's adjudged sentence was ambiguous and incomplete. *United States v. Walker*, No. ACM 39745, 2021 CCA LEXIS 14, at *9 (A.F. Ct. Crim. App. 19 Jan. 2021) (unpub. op.).[8] On 22 February 2021, this case was redocketed with this court after a corrected convening authority decision on action and entry of judgment were provided. We now address the raised issues in Appellant's assignments of error brief.

Finding no error materially prejudicial to Appellant, we affirm the findings and sentence.

## I. BACKGROUND

### A. The Criminal Offenses

Appellant was assigned to the 22d Communications Squadron at McConnell Air Force Base (AFB), Kansas. On 8 June 2018, the Air Force Office of Special Investigations (AFOSI) initiated an investigation into Appellant based on information received from Airman First Class (A1C) JD, who had purchased MDMA[9] from Appellant and observed Appellant snort a line of cocaine. A1C JD also provided AFOSI a photograph, a video, and social media posts from Twitter and Reddit related to Appellant's drug use.

Pursuant to a search warrant for Appellant's home, law enforcement found a bag of marijuana, a bag of cocaine, a bag with tetrahydrocannabinol, squares of 1P-LSD,[10] a container of DMT,[11] and materials used to extract and manufacture DMT. After the search of his residence, Appellant admitted conduct

---

[7] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[8] Our remand order was issued before our superior court decided *United States v. Brubaker-Escobar*, ___ M.J. ___, No. 20-0345, 2021 CAAF LEXIS 508 (C.A.A.F. 4 Jun. 2021) (finding the convening authority did not err by not taking action on the findings or sentence in that case).

[9] "MDMA" is a term for 3,4-methylenedioxymethamphetamine, a Schedule I controlled substance.

[10] "1P-LSD" is a psychedelic drug that is a derivative and functional analogue of lysergic acid diethylamide (LSD), a Schedule I controlled substance.

[11] "DMT" is the acronym for dimethyltryptamine, a Schedule I controlled substance.

associated with drug use. Specifically, Appellant admitted that while in the military, he ingested MDMA approximately ten times, used mushrooms[12] two to three times, snorted cocaine six to eight times, smoked DMT three times, and used lysergic acid diethylamide (LSD) approximately 15 times, including while on duty. Appellant also admitted that he manufactured DMT, sold LSD to A1C JD, and used drugs with three other Airmen. Finally, he admitted that he imported 1P-LSD and possessed "NBOMB."[13]

## B. Appellant's Post-trial Confinement

According to Appellant's declaration, he was diagnosed with adjustment disorder with mixed anxiety and received treatment at the 22d Medical Group mental health clinic at McConnell AFB.[14] On 25 March 2019, Appellant was prescribed ten milligrams of Lexapro per day to treat his depression.

Appellant was sentenced on Friday, 7 June 2019 and entered post-trial confinement at the Cowley County Jail, Winfield, Kansas the same day. Jail policy provided that medication received would be turned over to the jail nurse who would request approval through the Cowley County Jail doctor for approval. [15] Appellant did not receive his Lexapro for the next three days; 8, 9, and 10 June 2019.

The jail's records indicate Appellant did not send a formal medicine request on 8 or 9 June 2019, but did on 10 June 2019. The jail responded and Appellant received his medication the next day. Appellant claims he suffered severe withdrawal symptoms in these three days and as a result experienced more pain and suffering in the form of increased side effects. On 13 June 2019, Appellant also sent a request to the jail medical personnel asking to have his Lexapro dosage increased because he missed some days. The jail nurse responded to the request on 14 June 2019. On 18 June 2019 Appellant's Lexapro dosage was increased and remained increased until he was released from civilian confinement. However, Appellant complained of unwelcomed side effects.

---

[12] "Mushrooms" refer to psilocybin, a Schedule I controlled substance.

[13] "NBOMB" refers to 251-NBOMe, a Schedule I controlled substance.

[14] We granted Appellant's motion to attach his declaration to resolve the raised appellate issues. *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020) (finding Courts of Criminal Appeals may consider materials outside the record when doing so is necessary for resolving Article 55, UCMJ, and Eighth Amendment issues).

[15] We also consider Cowley County Jail Administrator JB's declaration to resolve the raised appellate issues. *See Jessie*, 79 M.J. at 444–45. JB oversees the policies that provide the services required by state and federal law at the Cowley County Jail.

Appellant further states that while he was in Cowley County Jail for three weeks,[16] he was in an open pod with approximately 15 to 20 other inmates, but slept in a cell which accommodated two or four inmates per cell. The guards were stationed above the inmates where the guards could see the inmates, but the inmates could not see the guards. While physical and verbal altercations broke out between the other inmates, Appellant was never involved in these altercations. Appellant and his pod-mates spent their time in the open pod area. Going to and from his medical appointment was the only time Appellant went outside during the three weeks in civilian confinement. Appellant's exercise consisted of doing push-ups and sit-ups in the open pod area.

## C. Post-trial Processing

On 7 June 2019, Appellant's sentence was announced. Appellant submitted clemency matters on 17 June 2019.[17] Three days later, on 20 June 2019, the convening authority took action on the sentence in Appellant's case in accordance with the PTA. On 24 June 2019, the military judge signed the entry of judgment. On 3 July 2019, the court reporter completed the transcript and certified the record of trial (ROT). On 11 July 2019, the ROT was mailed to Appellant and he receipted for it on 23 July 2019. On 30 July 2019, the ROT was received by the Military Justice Division of the Air Force Legal Operations Agency who then delivered the ROT to this court on 31 July 2019.[18]

After this court's remand, the convening authority signed another Decision on Action memorandum on 16 February 2021, and the military judge signed the modified entry of judgment on 18 February 2021. Appellant's appellate defense counsel filed a brief on 23 April 2021 informing the court that "Appellant specifically preserves and maintains the three assignments of error (AOE) raised in his initial brief to this Court . . . ."

## II. DISCUSSION

## A. Post-trial Confinement Conditions (Medication)

### 1. Law

---

[16] Subsequent to his three weeks in civilian confinement, Appellant was transferred to the Naval Consolidated Brig at Charleston, South Carolina.

[17] While the Government's answer to Appellant's assignment of error brief refers to 17 June 2019 in one section and later 18 June 2019 as the date when Appellant submitted clemency matters, Appellant's clemency package is dated 17 June 2019.

[18] Appellant's assignment of error brief indicates 31 July 2019 as the date Appellant's case was docketed with this court while the Government's answer to Appellant's brief refers to 21 July 2019 as the docketing date. We find that this case was docketed on 31 July 2019.

We review allegations of cruel and unusual punishment de novo. *See United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001). We also review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). Under our broad Article 66, UCMJ, 10 U.S.C. § 866, authority, we have the responsibility and de novo power to determine whether the adjudged and approved sentence is appropriate, based on a review of the entire record, which necessarily includes allegations of severe conditions of post-trial confinement. *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015) (citation omitted), *aff'd*, 75 U.S. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. Cruel or unusual punishments "are incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (internal quotation marks and citations omitted).

Article 55, UCMJ, also prohibits cruel or unusual punishment. In the absence of legislative intent to create greater protections under Article 55, courts are to apply the United States Supreme Court's interpretation of the Eighth Amendment to allegations of cruel or unusual punishment. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (citations omitted).

To demonstrate an Eighth Amendment violation, an Appellant must show: "(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant's] health and safety; and (3) that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938 [2000]." *Lovett*, 63 M.J. at 215 (alterations and omission in original) (internal quotation marks and footnotes omitted). An appellant has the burden of showing deliberate indifference by showing that officials had knowledge of, and yet disregarded, an excessive risk to the appellant's health or safety. *Id.* at 216 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Finally, a "prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wilson*, 73 M.J. 529, 534 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007)), *aff'd*, 73 M.J. 404 (C.A.A.F. 2014). "This administrative exhaustion requirement furthers two related goals: the resolution of the issue at the lowest level and the development of the record for later appellate review." *Id.* (citations omitted). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these

complaints be made while an appellant is incarcerated." *Id.* (footnote and citation omitted). "Unless there are some unusual or egregious circumstances, an appellant with a complaint about post-trial confinement conditions must show he has exhausted the prisoner-grievance system at the confinement facility and that he has petitioned for relief under Article 138, UCMJ. *Id.* (citations omitted).

"Denial of adequate medical attention can constitute an Eighth Amendment or Article 55[, UCMJ,] violation." *White*, 54 M.J. at 474 (citation omitted). Additionally, a "failure to provide basic psychiatric and mental health care can constitute deliberate indifference." *Id.* at 475 (citation omitted). "However, it is not constitutionally required that health care be 'perfect' or 'the best obtainable.'" *Id.* (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). While a prisoner is entitled to reasonable medical care, he is not entitled to "optimal" care. *Id.*

Should allegations be found to not violate either the Eighth Amendment or Article 55, UCMJ, we may still consider post-trial confinement conditions when determining overall sentence appropriateness. *Gay*, 74 M.J. at 742 (citing *United States v. Towns*, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000)).

Based on the facts of the case, this court may use its Article 66, UCMJ, authority to grant an appellant sentencing relief in the absence of cruel or unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ. *United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016) (citation omitted). Our superior court does not recognize "unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.*

### 2. Analysis

Appellant claims that the conditions of his post-trial confinement were cruel and unusual under both the Eighth Amendment to the United States Constitution and Article 55, UCMJ, because prison officials withheld his prescribed medication. He further claims that if this court determines that his conditions were not cruel and unusual under the Eighth Amendment and Article 55, UCMJ, he is nevertheless entitled to sentence relief under *Gay*, 74 M.J. at 743, because his post-trial confinement conditions at Cowley County Jail resulted in his sentence being inappropriately severe.

Appellant argues that he was unlawfully denied his prescribed Lexapro for three days by jail officials with "a culpable state of mind amounting to deliberate indifference to Appellant's health and safety." He claims he suffered severe withdrawal symptoms in the three days that he was denied his medication and, as a result, his medical provider doubled his dosage of Lexapro, causing him further pain and suffering in the form of increased side effects.

Because this court has found no legislative intent to create greater protections under Article 55, UCMJ, we will instead apply the Supreme Court's interpretation of the Eighth Amendment to Appellant's allegations of cruel and unusual punishment. *Lovett*, 63 M.J. at 215.

As to the first element, Appellant must demonstrate an objectively and sufficiently serious act or omission that resulted in the denial of a necessity. When Appellant first entered Cowley County Jail, it was late on a Friday night. Under normal conditions, Appellant would have submitted his prescription medication to the nurse at the jail who would have then requested approval through the jail doctor to administer the medication. It is unclear, from the record before us, how long this process usually takes or if weekends slow down the approval process. It is also unclear, from a medical or mental health perspective, the level of necessity for this medication as it relates to Appellant. Therefore, we assume, without deciding, that it is not objectively reasonable for it to take three days for prescription medication to be approved for inmates.

As to the second element, Appellant must demonstrate that the officials at the jail possessed a culpable state of mind amounting to deliberate indifference to his health and safety. Appellant alleges that he requested his medication and filed an inquiry via the jail's kiosk system on 8, 9, 10, and 11 June 2019 until he received his medication. Appellant alleges that jail officials knew of and deliberately disregarded an "excessive risk" to his health and well-being by denying him Lexapro. The Government contends, in its answer, that, according to the records of the jail's kiosk system, there are no records that Appellant requested his medication on 8, 9, or 11 June 2019. The Government's position is that the only record of Appellant's grievance regarding his medication was from 10 June 2019 and he received his medication the very next day on 11 June 2019.

Although Appellant's declaration is adequate on its face as to this issue, the appellate filings and the record as a whole compellingly demonstrate the improbability of those factual assertions.[19] Thus we find that Appellant's 10 June 2019 grievance regarding his medication was answered promptly by jail officials on 11 June 2019. As such, Appellant simply has not come forward with sufficient evidence showing deliberate indifference by the jail officials. There is nothing before us to find the jail officials disregarded Appellant's request for

---

[19] *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) ("[I]f the affidavit is factually adequate on its face but the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.").

medication, disregarded an excessive risk to Appellant's health or safety, intentionally denied or delayed Appellant's access to medical care, or intentionally interfered with his treatment.

Because we find that Appellant did not meet his burden under the second prong of the analysis, we need not decide the third prong. Nonetheless, we do note that this is not an issue of Appellant exhausting the prisoner grievance system, but rather successfully utilizing it when he requested his Lexapro on 10 June 2019 and received it the next day.

We find Appellant has not met his burden in showing that the conditions based on his medication amounted to cruel and unusual punishment under the Eighth Amendment and Article 55, UCMJ.

As Appellant has not met his burden, we will discuss whether he is, nonetheless, still entitled to relief under *Gay*, 74 M.J. at 736, based on allegations that his post-trial confinement conditions at Cowley County Jail resulted in his sentence being inappropriately severe. However, as Appellant combines his post-trial confinement conditions claim with an argument alleging the Government delayed the forwarding of Appellant's record for appellate review, we will address both of these issues together below.

## B. Delay in Post-Trial Processing

### 1. Law

We review an appellant's due process right to a speedy post-trial review and appeal de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). "This court has recognized that convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Merritt*, 72 M.J. 483, 489 (C.A.A.F. 2013) (citing *Moreno*, 63 M.J. at 135).

The test to review claims of unreasonable post-trial delay, set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), is to evaluate "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker*, 407 U.S. at 530) (other citations omitted)).

"Once this due process analysis is triggered by a facially unreasonable delay, the four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Merritt*, 72 M.J. at 489 (citing *Moreno*, 63 M.J. at 135). None of the four factors are either a necessary or sufficient condition to the finding of a due process deprivation. *Barker*, 407 U.S. at 533. Additionally, no "single factor is required for finding a due process violation and the absence of a given factor will not prevent such

9

a finding." *Moreno*, 63 M.J. at 136. "We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136.

In evaluating the reasons for the delay, the court looks at "the Government's responsibility for any delay, as well as any legitimate reasons for the delay, including those attributable to an appellant." *Id*. In evaluating the appellant's assertion of the right to timely review and appeal, we consider an appellant's role in the delay. *Id*.

In evaluating prejudice, the United States Court of Appeals for the Armed Forces (CAAF) has found three interests for prompt appeals: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired." *Merritt*, 72 M.J. at 490 (citing *Moreno*, 63 M.J. at 138–39).

As it relates to the minimization of anxiety, "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Moreno*, 63 M.J. at 140.

If a court does not find that the post-trial delay was prejudicial under the fourth *Moreno* factor, a due process violation only occurs when, "in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Under the new Rules for Courts-Martial procedures, a convening authority is no longer required to take action on the results of every court-martial. *See* Rule for Courts-Martial (R.C.M.) 1109 and 1110. The convening authority may, after consulting with the staff judge advocate or legal advisor and considering any matters timely submitted by the accused or a crime victim, decline to take action on the sentence. R.C.M. 1109(c), (d), (g).

After the convening authority's decision is communicated to the military judge, the military judge enters the judgment of the court into the record of trial, a process known as "entry of judgment." R.C.M. 1111(a). The entry of judgment takes the place of action by the convening authority under the former procedures in the sense that it "terminates the trial proceedings and initiates the appellate process." R.C.M. 1111(a)(2). After the military judge enters the judgment, the court reporter prepares and certifies the record of trial and attaches additional matters to the record for appellate review. R.C.M. 1112(c), (f).

In *Tardif*, the CAAF recognized that "a Court of Criminal Appeals has authority under Article 66(c), [UCMJ,] to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." 57 M.J. at 244 (citation omitted). "[I]n addition to its determination that no legal error occurred within the meaning of Article 59(a), the [Court of Criminal Appeals is] required to determine what findings and sentence 'should be approved,' based on all of the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay." *Id.*

**2. Analysis**

Appellant claims that he is entitled to sentence relief due to an unreasonable post-trial delay because his case was not docketed with our court within 30 days of action by the convening authority. Appellant alleges that he has been denied his due process right to a speedy post-trial review and has thus been prejudiced. Appellant further argues that even if this court finds that he has not been prejudiced by the delay, he is still entitled to sentence relief under *Tardif*.

Both the Defense and Government cite *United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.) regarding how to calculate the post-trial time process. Since this court decided *Moody-Neukom*, we have addressed this specific issue on more than one occasion. We find this court's opinion in *United States v. Clark-Bellamy*, No. ACM 39709, 2020 CCA LEXIS 391 (A.F. Ct. Crim. App. 27 Oct. 2020) (unpub. op.) and *United States v. Livak*, 80 M.J. 631 (A.F. Ct. Crim. App. 2020), most helpful. *Clark-Bellamy* looked at the *Moreno* standard post *Moody-Neukom* as well as *Livak*.

In *Livak*, this court explained that "[d]epending on the length and complexity of the record involved, we can envision cases in which the court reporter is still transcribing the proceedings after the convening authority's decision." 80 M.J. at 633. "As such, the prior 30-day period from action to docketing, which primarily involved transmitting an already-completed ROT to the Court of Criminal Appeals, now overlays substantive actions such as completing the preparation of the record." *Id.* Therefore, "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine an unreasonable delay under the new procedural rules." *Id.*

This court ultimately decided that we can apply the aggregate *Moreno* standard of 150 days from the day an appellant was sentenced to docketing with this court. *Id. Livak* concluded that the "150-day threshold appropriately

protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno.*" *Id*. We agree with *Livak's* analysis and holding and apply its analysis here.

Appellant was sentenced on 7 June 2019 and the record was docketed with this court on 31 July 2019. This accounts for 54 days of post-trial processing time—approximately one third of the aggregate *Moreno* standard. Therefore, we find no facially unreasonable delay.

Because we find that the 150-day threshold was not violated, there is no post-trial delay that was prejudicial. As such, we will not proceed further with the *Barker* analysis and deny Appellant's claim.

## C. Post-Trial Confinement Conditions (Jail Conditions)

### 1. Law

The law related to the first issue applies to this one as well and we rely on the law as set forth above.

### 2. Analysis

Here Appellant claims that the conditions at Cowley County Jail amounted to cruel and unusual punishment because the guards did not ensure his safety and he was denied amenities typically received in Air Force confinement facilities during his three-week incarceration at the jail. He alleges that he was housed in an open bay with 15 to 20 prisoners, there was minimal supervision from the guards, he was never permitted to go outside, and he did not have access to a gym.

Appellant relies on Air Force Manual (AFMAN) 31-115, *Air Force Corrections Systems* (28 Aug. 2019), to assert that his rights were violated. As Appellant was a post-trial prisoner at all times relevant to this issue, we turn to Article 55, UCMJ. Because the alleged noncompliance with AFMAN 31-115 does not fall within the enumerated punishments prohibited under Article 55, UCMJ, we will apply the Supreme Court's interpretation of the Eighth Amendment to Appellant's allegations of cruel and unusual punishment. *Lovett*, 63 M.J. at 215.

First, we are not convinced that being in an open bay, supervised by guards that can see inmates but cannot be seen by inmates, or a three-week absence from recreational and fitness equipment qualifies as an objectively and sufficiently serious act or omission resulting in the denial of a necessity. According to the jail administrator's declaration, outside activities are not a requirement at Cowley County Jail. Appellant did not sleep in an open bay, he was never injured, nor is there any reason to believe he was threatened. Put plainly, Appellant was not denied necessary amenities while incarcerated at Cowley County Jail.

Additionally, Appellant does nothing to demonstrate that the officials at the jail possessed a culpable state of mind amounting to deliberate indifference to his health and safety, that he has exhausted the prisoner grievance system with respect to these complaints, or that that he has petitioned for relief under Article 138, UCMJ.

Therefore, we find Appellant is not entitled to relief as to this issue.

### D. *Gay* and *Tardif* Relief.

#### 1. Law

Based on the facts of the case, this court may use its Article 66, UCMJ, authority to grant an appellant sentencing relief in the absence of cruel or unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ. *See Gay*, 75 M.J. at 269.

#### 2. Analysis

Appellant argues that similar to *Gay*, 74 M.J. at 736, his sentence is inappropriately severe both on the basis of his post-trial confinement conditions and the Government's delay in forwarding Appellant's ROT for review. Specifically, Appellant argues that jail officials unnecessarily denied him his medicine resulting in physical and psychological manifestations. Additionally, Appellant claims the Government delayed the forwarding of the ROT for appellate review past the *Moreno* standard with no reasonable explanation.

While we do not excuse the jail's failure to provide Appellant his prescribed medication, we are not persuaded that the conditions were inappropriately severe as contemplated by *Gay*. Since deciding *Gay*, this court has stated that it will only grant sentence relief under Article 66, UCMJ, in very rare circumstances. *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted). This case is distinguishable from *Gay* and does not present such rare circumstances. In *Gay*, the appellant was placed in solitary confinement without a valid reason and suffered an unreasonable delay in his post-trial processing. We do not find that Appellant's deprivation in missing Lexapro for three days arises to that demonstrated in *Gay*, especially when one considers that the jail officials appeared to follow the jail policy which required that medication received would be turned over to the jail nurse who would request approval through the Cowley County Jail doctor for approval before administering it to Appellant.

Appellant next claims that he is entitled to *Tardif* sentence relief under Article 66, UCMJ. However, because we find that no post-trial delay occurred under the new procedures, post *Moreno*, and specifically that there was no unexplained and unreasonable post-trial delay, *Tardif* relief is inappropriate.

13

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court